UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Case No. 1:07-CR-0487** |
| Plaintiff, | : | **JUDGE KATHLEEN O'MALLEY** |
| v. | : | |
| **LEWIS LARCH, JR.,** | : | **OPINION & ORDER** |
| Defendant. | : | |

Before the Court is Defendant Lewis Larch, Jr.'s ("Larch") *Motion for Judgment of Acquittal Pursuant to Rule 29(c)* ("Motion for Acquittal") (ECF Doc. 54), which was filed on March 31, 2008. The Government filed a response on April 21, 2008 (ECF Doc. 56), and Larch filed a reply on April 28, 2008 (ECF Doc. 57). Accordingly, this motion is ripe for adjudication. For the reasons more fully articulated below, Larch's Motion for Acquittal is **DENIED**.

### I. PROCEDURAL BACKGROUND

On March 12, 2008, a jury found Larch guilty of each of the charges in a two-count indictment. (ECF Doc. 52.) Count One of the indictment charged Larch with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[1] Count Two of the indictment charged

---

[1] Count One of the indictment charges as follows:

On or about July 10, 2004, in the Northern District of Ohio, Eastern Division, **LEWIS E. LARCH, JR.**, having previously been convicted of crimes punishable by imprisonment for a term exceeding one year . . . did knowingly possess firearms in and affecting interstate commerce, to wit: a Marlin, .30 caliber, lever action rifle; a Remington, model 870, 12 gauge, pump action

Larch with possession of a stolen firearm in violation of 18 U.S.C. § 922(j).[2] The Jury Instructions set forth the elements of § 921(g)(1), felon in possession, as follows:

> The Government must prove three essential elements in order to establish the crime charged in Count 1 of the indictment:
>
> 1. that the Defendant was convicted of a felony punishable by imprisonment for more than one year under the laws of the State of Ohio;
> 2. that on or about the date set forth in the indictment, the Defendant knowingly possessed one of the firearms described in Count 1; and
> 3. that the firearm or firearms was or were possessed in, or affecting, commerce; that is, it/they had previously traveled in interstate commerce.

(*Final Jury Instructions,* ECF Doc. 51 at 19.) With respect to the elements of § 922(j), possession of a stolen firearm, the Jury Instructions provided:

---

> shotgun; a Harrington & Richardson, 12 gauge, single shot shotgun; an Ithaca, 12 gauge, pump shotgun, pistol grip; an AMT, .380 caliber, semi-automatic pistol and a Remington, .22 caliber, bolt action rifle, all in violation of title 18, United States Code, Section 922(g)(1), and punishable under Section 924(a)(2).
>
> (*Indictment*, ECF Doc. 1.)

[2] Count Two of the indictment charges as follows:

> On or about July 10, 2004, in the Northern District of Ohio, Eastern Division, **LEWIS E. LARCH, JR.**, did receive, possess, . . . or dispose of stolen firearms, to-wit: a Marlin, .30 caliber, lever action rifle; a Remington, model 870, 12 gauge, pump action shotgun; a Harrington & Richardson, 12 gauge, single shot shotgun; an Ithaca, 12 gauge, pump shotgun, pistol grip; an AMT, .380 caliber, semi-automatic pistol and a Remington, .22 caliber, bolt action rifle, which had been shipped or transported in interstate or foreign commerce, knowing or having reasonable cause to believe that said firearms were stolen, in violation of Title 18, Section 922(j), United States Code.
>
> (*Id*.)

> The Government must prove four essential elements in order to establish the crime charged in Count 2 of the indictment:
>
> 1. that the Defendant knowingly possessed, received, or disposed of one or more of the firearms specified in the indictment;
> 2. that the specified firearm was stolen;
> 3. that the specified firearm crossed a state line prior to the alleged possession; and
> 4. that the Defendant knew or had reasonable cause to believe that the firearm was stolen.

(*Id*. at 31.)

In reaching their guilty verdict, the jury necessarily found that the Government presented evidence sufficient to establish, beyond a reasonable doubt, all of the above elements of each of the crimes charged in the indictment. In his Motion for Acquittal, Larch argues that the evidence presented at trial was insufficient to prove the possession element of either of the crimes charged.[3] (ECF Doc. 54 at 1.) Thus, Larch's Motion for Acquittal does not challenge the Jury's finding with respect to the other elements of the crimes charged; his arguments are limited to the sufficiency of

---

[3] The Government argues that Larch is not seeking acquittal with respect to Count 2 of the indictment, possession of a stolen firearm in violation of 16 U.S.C. § 922(j), because the Motion for Acquittal does not specifically reference § 922(j). (ECF Doc. 56 at 2, n1.) The Government notes that the "possession" elements of §§ 922(g)(1) and 922 (j) are not identical because § 922(g)(1) requires that the defendant "knowingly possessed" a firearm while § 922(j) requires that the defendant "knowingly possessed, received, or disposed of" a firearm. (*Id*.) In his reply, Larch concedes that his Motion for Acquittal did not specifically reference § 922(j), but submits that his intention to challenge both counts is clearly implicit in his arguments in support of acquittal. (ECF Doc. 57 at 2-3.) That is, he is challenging the sufficiency of proof of possession generally, which is clearly applicable to the possession element of both counts. Larch also notes that his oral motion for judgment of acquittal at the close of the Government's case in chief was not limited to Count 1. (*Id*. at 2.) As Larch admits, failing to specifically reference § 922(j) was an oversight. The possession elements of the crimes charged in the two counts are intertwined, however, and the Court is satisfied that Larch intended to seek a judgment of acquittal with respect to each Count. Accordingly, the Court will treat the Motion for Acquittal as a challenge to his conviction for violation of both § 922(g)(1) and § 922(j).

the evidence of actual, constructive, and/or joint possession.

## II. EVIDENCE PRESENTED AT TRIAL

In sum, the Government's witnesses[4] testified as follows at trial:

A burglary occurred at the home of Michael Sheehan and his wife on the evening of July 10, 2004. Mrs. Sheehan had arrived home from a weekend trip that day and had been unpacking her suitcase on the bed in the upstairs bed room. That evening, the Sheehans received a call from a family member inviting them to a picnic that evening. They left the suitcase on the bed in their upstairs bedroom and a large duffle bag – approximately four feet long -- on the floor in the dining room and went to the picnic. When they returned from the picnic a few hours later, they immediately noticed that an intruder had been in the house and that they had been robbed. They immediately called the Avon Lake police, who came shortly thereafter and conducted an investigation.

The police concluded that the intruder's point of entry was an open window of an enclosed porch. A flower pot placed under the window was disturbed. The police observed scuff marks on the aluminum siding directly under the window, suggesting that the intruder had scuffed the siding with his shoes while climbing in the window, using the flowerpot as a stool.

Among the items stolen that evening were the six guns listed in the indictment. The guns had been stored in the Sheehans' upstairs bedroom. Some of Mrs. Sheehan's jewelry was also taken from the upstairs bedroom.

The first floor of the house was also disturbed. The suitcase that had been on the bed in the upstairs was now in the downstairs living room, essentially empty. The large duffle bag that the Sheehans had left in the dining room was gone, and some of the jewelry that had been stored in the

---

[4]     Larch did not call any witnesses at trial.

upstairs bedroom was found on the floor of the living room near the suitcase. In addition, a DVD player was missing from the wood and glass entertainment cabinet, and a glass panel that had been in the entertainment cabinet with the DVD player was now lying on the living room floor. The police found latent fingerprints on the glass panel. After comparing these fingerprints to the known prints of Larch, two fingerprint analysts testified to their conclusion that the prints on the glass panel belonged to Larch.[5]

The Government's witnesses testified that three of the six guns listed in the indictment were never recovered, while the other three were found sometime later in the possession of a third party. The Government's witnesses did not testify that there was any connection between Larch and the third party from whom the guns were eventually recovered. Instead, the Government's witness testified that stolen guns frequently change hands.

### III. STANDARD OF REVIEW

When the jury returns a verdict of guilty, a criminal defendant may move the Court for a judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure. A Rule 29(c) motion challenges the sufficiency of the evidence, and the defendant claiming insufficiency of the evidence bears a "very heavy burden." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir.

---

[5] While counsel had indicated a desire to attack the reliability of the fingerprint evidence, and the Court announced its intention to conduct a hearing to assess that challenge, Larch withdrew it. The Court addressed Larch and his counsel in open court on this issue and confirmed both that they were firm in their desire to withdraw the fingerprint challenge and that the decision to do so was Larch's own, with an understanding of his right to pursue the question and the Court's willingness to do so searchingly. (ECF Doc. 36.) Larch also did not mount any challenge to the strength of this evidence at trial. Larch's strategy decisions on this point are significant. At trial, Larch conceded that his finger print was, in fact, the print found on the glass cover to the DVD player and that the presence of his fingerprint placed him in Sheehan home at the time of the burglary.

2007) (quoting *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002)). If the Court finds that, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," it must deny the defendant's Rule 29(c) motion. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999). Furthermore, as the Sixth Circuit recently stated: "When deciding whether any rational trier of fact could have found the essential elements of the crime, this court does not "weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury." *Gardner*, 488 F.3d at 710 (omitting internal quotations and citations). When the inferences drawn from the evidence presented are rationale, the Court's "mandate is to affirm" the jury's decision. *United States v. Arnold*, 486 F.3d 177, 182 (6th Cir. 2007) (en banc).

### IV. LAW & ANALYSIS

The Court finds that the evidence was sufficient to support the jury's verdict. Specifically, the Court finds that a rationale trier of fact could have found that Larch "possessed" the firearms listed in the indictment – either actually, constructively, and/or jointly – based on the evidence presented at trial. Given that Larch is not challenging the sufficiency of the evidence with respect to any of the other elements of the crimes charged in the indictment, his Motion for Acquittal is denied.

### A. "Possession" In the Context of 18 U.S.C. §§ 922(g)(1) and (j)

Possession is an element of both of the crimes charged in the indictment. "[P]ossession may be proved by direct or circumstantial evidence." *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973). Therefore, reasonable inferences may serve as the basis of the jury's finding that the

6

defendant "possessed" a firearm. *Arnold*, 486 F.3d at 181 (citing cases in which the jury inferred actual possession of a firearm from circumstantial evidence). In addition, possession may be "actual" or "constructive." *Craven*, 478 F.2d at 1333. In *Craven*, the Sixth Circuit defined both actual and constructive possession in § 922 cases as follows:

> Actual possession exists when a tangible object is in the immediate possession or control of the party. Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.

*Id.*

The Government argues that the evidence presented at trial was sufficient to support a finding of *either* actual or constructive possession.

**B.    Actual Possession**

Actual possession is defined as "immediate possession or control." *Id*. The Government argues that the evidence indicating that Larch acted alone in burglarizing the Sheehan's home was sufficient to establish that he had immediate possession or control of the guns listed in the indictment. The Government contends that there was ample evidence that Larch broke in to the Sheehan's house alone, and that the jury could reasonably infer from this evidence that he actually possessed the guns when he left. Specifically, the Government points to the following facts: (1) the scuff marks on the siding under the window indicate that the intruder was not hoisted into the window by an accomplice, but climbed in the window himself; (2) one person could have removed all of the stolen items from the house by using the large duffle bag; (3) Larch's fingerprints were found on the glass panel, in close proximity to a suitcase and jewelry taken from the upstairs bedroom. The Government summarizes its actual possession theory as follows:

7

> The jury could have reasonably inferred that Larch removed Mrs. Sheehan's jewelry and the 6 firearms from the master bedroom, took them downstairs in the suitcase, noticed the extra-large duffel bag in the dining room, stopped in the living room to steal the DVD player and dump the contents of the suitcase into the duffel bag, and then walked out of the house carrying the [sic] all of the items stolen from the Sheehans. In fact, this sequence of events certainly explains why Mr. Sheehan noticed pieces of his wife's jewelry on the living room floor . . . .

(ECF Doc. 56 at 5.)

Larch argues that there is no evidence of actual possession, and that the fact that none of the firearms were ever traced back to Larch undercuts the Government's theory. He submits that the connection between Larch's fingerprints on the glass panel and the firearms is too tenuous to support the jury's verdict because there are numerous other explanations for the disappearance of the firearms. For example, in her closing arguments, counsel for Larch noted that Michael Sheehan testified that the last time he actually saw the guns was two weeks prior to the burglary, and argued that the Government had only provided one link in a chain of purely circumstantial evidence leading to proof of possession beyond a reasonable doubt, *i.e.*, that, based on the fingerprint evidence, it was clear Larch was in the Sheehan's home on the night in question. Larch's counsel argued that the evidence also was consistent with more than one burglar being in the Sheehan home on July 10, 2004, and that, it, thus, would be mere speculation to conclude that Larch *intended* to possess the stolen firearms, as opposed to simply intending to participate in a burglary where someone else took and maintained possession of the firearms,[6] or coincidentally participating in a burglary of property

---

[6] In his brief in support of this Rule 29(c) motion, Larch also hypothesizes that the Sheehans' college-aged son could have, unbeknownst to his father, taken the firearms during the two week period between the time Michael Sheehan put them under the bed and July 10, 2004. (ECF Doc. 56 at 7.) Larch did not present this theory to the jury in his closing arguments, however, and the testimony at trial did not provide significant support for it. Michael Sheehan testified that his son was living at home at the time, because he was home from college for the summer, but that his son was not home at all on July 10, 2004. There was no other mention of

at or near the time of a second burglary involving the firearms.

The Government and Larch have both presented plausible theories in support of their respective positions regarding actual possession. The Court's duty, however, is to analyze these arguments in the context of a Rule 29(c) motion, which requires the Court to construe the evidence in the light most favorable to the prosecution. *See Jackson*, 443 U.S. at 319. If, based on the evidence so construed, *any* rational trier of fact could find actual possession, then the Court must deny Larch's Motion for Acquittal. *Id*. In analyzing this question, "[i]t is not necessary that such evidence remove every reasonable hypothesis except that of guilt." *Craven*, 478 F.2d at 1333.

As the Sixth Circuit recently stated in *Arnold*, "'possession may be proved by . . . circumstantial evidence' . . . [and] we cannot overturn a jury's decision merely because it had to draw reasonable inferences to find [the defendant] guilty." *Arnold*, 486 F.3d at 181 (quoting *Craven*, 478 F.2d at 1333). In *Arnold*, the jury heard testimony from a witness who said the defendant had threatened her with a black handgun. *Id*. at 180. After the witness called 911 to report the incident, the police immediately investigated. *Id*. Soon after they arrived on the scene, the police encountered the defendant, Mr. Arnold, sitting in the passenger's seat of a car driven by the witnesses' mother. *Id*. at 181. When they searched the car, the police found a plastic bag containing a black handgun matching the general description provided by the witness under the passenger's seat. *Id*. Although there were no fingerprints on the handgun, and the witness' description of the gun was generic, the jury found that Mr. Arnold possessed the gun found in the car. *Id*. The Sixth Circuit acknowledged that the jury *did not* hear evidence describing the acts that would have had to occur between the time Mr. Arnold allegedly threatened the witness with the gun and the police found the gun. That is, "the

---

the Sheehan's son at the trial. This evidence is not sufficient to undermine the jury's conclusion, especially in light of the Rule 29(c) standard.

9

government did not offer evidence that, after Arnold threatened [the witness] with a gun, someone saw him take the gun, wipe his fingerprints off it, place the gun in a plastic bag and stick it under his seat in [the witness'] mother's car." *Id*. Nonetheless, based on the evidence the government *did* present, "*any* rational trier of fact" could reasonably infer that these acts occurred. *Id*. (quoting *Jackson*, 443 U.S. at 319).

As in *Arnold*, the jury in this case could reasonably infer from the testimony regarding the circumstances of the burglary, the disappearance of the guns and DVD player, and Larch's fingerprints on the glass panel that it was he who took the firearms listed in the indictment. Although the Government did not present evidence describing Larch walking out of the house holding the firearms, or evidence sufficient to logically preclude Larch's alternative theory of the case, the evidence it did present supports the inference that Larch took the guns. The fingerprint evidence put Larch in the Sheehan's home on July 10, 2004. In fact, he admits now, as he did to the jury at trial, that the evidence is sufficient to establish that he was involved in the burglary. (ECF Doc. 57 at 6; Tr. at 253-54, 259-60.) The Sheehans did not know Larch, and the jury could easily infer that the only conceivable reason he was in their house that evening was to steal their personal property. Although it is possible that the firearms had disappeared prior to the evening in question, it is patently reasonable to connect their disappearance to the burglary on that day, particularly given that that is when the Sheehans noticed that the firearms were missing. In light of this evidence, the inference that Larch took the firearms when he was in the Sheehans' home on July 10th, and, therefore, that he actually possessed the firearms is neither tenuous nor irrational. Accordingly, the jury could have found the element of (actual) possession beyond a reasonable doubt and Larch has not satisfied his burden under Rule 29(c).

**C.     Constructive Possession**

Even if the evidence were insufficient to establish actual possession beyond a reasonable doubt under the standard applicable to a Rule 29(c) motion, the Government also asserts that the jury could have reasonably concluded that Larch "possessed" the firearms listed in the indictment "constructively," either jointly or alone. The Sixth Circuit defines constructive possession as follows:

> Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. Moreover, proof that the person has dominion over the premises where the firearm is located is sufficient to establish constructive possession.

*Gardner*, 488 F.3d at 713 (omitting internal citations and quotations); *see also United States v. Newsom*, 452 F.3d 593, 608-09 (6th Cir. 2006).

Larch concedes that "the government's proof established Mr. Larch's presence and involvement in a burglary at the Sheehan residence on July 10, 2004." (ECF Doc. 57 at 6.) Larch also acknowledges that, in the Sixth Circuit, "dominion over the premises where the firearm is located" may be sufficient, but notes that the Court has placed certain limits on the scope of "dominion over the premises." Namely, mere proximity to the firearm or presence in the place where it is kept is not enough to satisfy this standard. For example, in *Birmley* the Sixth Circuit stated:

> Mere presence on the scene plus association with illegal possessors is not enough to support a conviction for illegal possession of an unregistered firearm. Presence alone cannot show the requisite knowledge, power, or intention to exercise control over the unregistered firearms.

*United States v. Birmley*, 529 F.2d 103, 107-08 (6th Cir. 1976) (citing *United States v. Craig*, 522 F.2d 29 (6th Cir. 1975); *United States v. Clunn*, 457 F.2d 1273 (10th Cir. 1972)). Similarly, in

11

*Arnold* the Sixth Circuit noted that it has found insufficient evidence of constructive possession when the sole connection between the defendant and the gun is its proximity to the defendant. *Arnold*, 486 F.3d at 183.

Larch argues that the evidence presented at trial provided circumstantial evidence that Larch stole the DVD player, but not that he possessed any of the other items in the Sheehan's home. (ECF Doc. 54 at 5.) In support of his position, Larch cites *United States v. Beverly*, 750 F.2d 34 (6th Cir. 1984) and *United States v. Grubbs*, 506 F.3d 434 (6th Cir. 2007) for the proposition that the Government's evidence merely established that Larch was near the firearms and/or present when they were stolen.

In *Beverly*, the police executed a search warrant at the home of a third party. 750 F.2d at 35. The defendant, Mr. Beverly, was in the third party's home at the time the warrant was executed. *Id*. When a police officer encountered Mr. Beverly in the kitchen, he told him to place his hands on the wall and patted him down. *Id*. During the pat down, the police officer noticed a wastebasket next to Mr. Beverly's feet. Two handguns were in the wastebasket, in plain view. *Id*. Subsequent analysis revealed that a latent print on one of the handguns matched the known print of Mr. Beverly's left ring finger. *Id*. Based on this evidence, the jury convicted Mr. Beverly of a violation of 18 U.S.C. § 922(h)(1). *Id*. The district court denied Mr. Beverly's motion for acquittal, finding the evidence of constructive possession sufficient to support the jury verdict. *Id*. The Sixth Circuit reversed, holding that the evidence was insufficient to establish either actual or constructive possession; *i.e.*, that: (1) the kitchen, wastebasket, or the handgun itself were not within Mr. Beverly's direct or indirect control; or (2) that presence in the kitchen, proximity to the waste basket, and evidence that he had at some point *touched* the handgun was not sufficient to establish

12

constructive possession. *Id*. at 37. Larch argues that *Beverly* demonstrates that the defendant's presence at or near the location of the firearm is not sufficient. He asserts that *Beverly* supports acquittal because the evidence connecting Mr. Beverly to the handgun in the waste basket – a fingerprint – is stronger than any evidence connecting Larch to the firearms identified in the indictment.

In support of this application of *Beverly*, Larch quotes *Grubbs*, 506 F.3d at 440, in which the Sixth Circuit discussed constructive possession and noted that "the less evidence tying a defendant to a gun at the time of arrest, the greater the circumstantial evidence must be to support a conviction." Larch notes that the Government's witnesses admitted that three of the firearms identified in the indictment were never recovered and the other three were recovered from a third party with no connection to Larch whatsoever. He argues that this testimony requires the Government to present "greater" circumstantial evidence in support of the conviction. (ECF Doc. 54 at 7.) Larch contends that the Government failed to meet this heightened burden of establishing constructive possession; *i.e.* that Larch knowingly had the power and intention to exercise dominion and control over the fire arms at issue.

In response, the Government concedes that mere presence near a firearm is not sufficient, and notes that "other incriminating evidence, coupled with presence . . . will serve to tip the scale in favor of sufficiency." *Birmley*, 529 F.3d at 108 (citing *United States v. Ransom*, 515 F.2d 885 (5th Cir. 1975); *United States v. Thomas*, 497 F.2d 1149 (6th Cir. 1974); *United States v. Phillips*, 496 F.2d 1395 (5th Cir. 1974)). First, the Government argues that Larch was not "merely present" in the Sheehan's home. (ECF Doc. 56 at 7.) Unlike the invitee-defendants in *Beverly* and *Grubbs*, Larch was an intruder; a burglar whose intention was to take the Sheehan's personal property, some of the

13

most valuable of which were their multiple firearms. Second, the Government argues that, even if Larch was not alone in the Sheehan's home on July 10th, the only reasonable conclusion based on the evidence was that he was working with the other burglar. According to the Government, it follows that Larch had joint constructive possession over the firearms, even if he was not the only burglar in the Sheehan's home.

The Court agrees with the Government. Again, Larch admits that the evidence established that he was involved in a burglary of the Sheehan's home on July 10, 2004. (ECF Doc. 57 at 6.) This immediately distinguishes him from the defendants in *Beverly* and *Grubbs*, who were invitees and whose presence in the vicinity of the respective firearms at issue easily lent itself to innocent explanations. This distinction is important because, in ordinary social relationships, a guest does not intend to exercise dominion and control over his host's personal property. Therefore, evidence beyond the guest's presence and proximity is clearly necessary to establish constructive possession beyond a reasonable doubt. In contrast, inherent in a burglary is the burglar's intention to exercise dominion and control over the stolen property.

The Government presented evidence indicating that Larch's fingerprints were on a the glass panel associated with the DVD player that was stolen on July 10th.[7] Based on this testimony, the jury reasonably concluded that Larch was in the Sheehan's home and stole the DVD player, and Larch does not contest this aspect of the jury's conclusion. In addition, the jury apparently credited

---

[7] Again, Larch did not challenge either the reliability of this evidence or the conclusion that it was sufficient to establish Larch's participation in a burglary of the Sheehan home on that night. Though this Court is aware of significant debate in the scientific and legal community with respect to the reliability of fingerprint evidence, particularly of the type at issue here, Larch's decision not to challenge the evidence in this case mooted the Court's need to assess or weigh in on that debate.

14

Michael Sheehan's testimony that the firearms were taken at the same time as the DVD player and concluded that the person who stole the DVD player also stole the firearms. The jury apparently closed the logical loop by finding that constructive possession[8] existed because Larch intended to possess what he stole.

There is nothing unreasonable about these conclusions. Even though other conclusions are conceivable, the Court is evaluating a Rule 29(c) Motion for Acquittal and may not "weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury." *Gardner*, 488 F.3d at 710 (omitting internal quotations and citations). The jury's finding that Larch had constructive possession of the firearms beyond a reasonable doubt was not irrational, and, accordingly, the Court must follow its mandate to uphold the jury verdict under these circumstances. *Arnold*, 486 F.3d at 182.

In addition, it is well-established that two or more people may have joint constructive possession of an object, and Larch does not object to that concept in this case. *See e.g.*, *Craven*, 478 F.2d at 1333. Therefore, the possibility that Larch was not the only burglar in the Sheehan's home on July 10, 2004 does not undermine the jury's finding of constructive possession. The alternative – that two burglars, operating entirely independently, broke into the Sheehan's home within a few hours of one another, and that Larch was not the burglar who took the firearms – is so improbable that it actually supports the reasonableness of the jury's conclusion that Larch played a role in the theft of the firearms identified in the indictment.

---

[8] Bear in mind that the jury determined that Larch possessed the firearms identified in the indictment, but was not required to specify whether possession was actual or constructive, sole or joint. As noted in this section and above, however, the Court finds that the distinction is irrelevant to the outcome because, based on the Rule 29(c) standard, the evidence was sufficient to establish actual *and* constructive possession, either solely or jointly.

## V. CONCLUSION

Accordingly, Defendant Lewis Larch, Jr.'s *Motion for Judgment of Acquittal Pursuant to Rule 29(c)* (ECF Doc. 54) is hereby **DENIED**.

**IT IS SO ORDERED.**

                                                  s/Kathleen M. O'Malley
                                                  **KATHLEEN McDONALD O'MALLEY**
**Dated: July 2, 2008**                          **UNITED STATES DISTRICT JUDGE**